UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GRAHAM,<br><br>          Plaintiff,<br><br>     v.<br><br>KRUSH, INC.,<br><br>          Defendant. | No.  2:14-cv-0517 MCE KJN (TEMP)<br><br><br>FINDINGS AND RECOMMENDATIONS |

This matter came before the court on September 4, 2015, for hearing of plaintiff's motion for default judgment.[1]  (Dkt. No. 20.)  Attorney Joel Waelty appeared telephonically on behalf of the plaintiff.  No appearance was made by or on behalf of the defendant.  At that time oral argument was heard and the motion was taken under submission.  Having considered all written materials submitted with respect to the motion, the undersigned recommends that the motion for default judgment be granted.

BACKGROUND

Plaintiff initiated this action on February 21, 2014, by filing a complaint and paying the required filing fee.  (Dkt. No. 2.)  According to plaintiff's complaint, on October 15, 2012, plaintiff, a citizen of California, found a listing for a job opening with Krush, Inc., ("Krush"), a

---

[1] On November 6, 2015, this matter was reassigned from the previously assigned Magistrate Judge to the undersigned.  (Dkt. No. 21.)

1

1  corporation not headquartered in California[2], offering a $72,000 annual salary plus benefits.[3]
2  (Compl. (Dkt. No. 2) at 2-3.[4])  At the time, plaintiff was "employed at I-Path shoes," ("I-Path"),
3  earning $15,000 annually, and by Rome Snowboards, ("Rome"), as a "brand representative."  (Id.
4  at 2.)  On December 6, 2012, Gina Ashe, ("Ashe"), then Krush's CEO, contacted plaintiff and
5  interviewed him on December 12 and December 17, 2012.  (Id. at 3.)

6  During these interviews, Ashe informed plaintiff that, if hired by Krush, plaintiff could
7  not continue working for Rome or I-Path.  (Id.)  Plaintiff explained that "it had taken him years to
8  obtained employment . . . through I-Path Shoes and Rome Snowboards," making plaintiff
9  "apprehensive to depart so hastily."  (Id.)  "Krush reassured plaintiff that they were committed to
10 him and his future employment with their company."  (Id.)  Moreover, Ashe informed plaintiff
11 that Krush had agreed to hire plaintiff at "1/2 time" until he "finished this season with Rome,"
12 before commencing full time employment with Krush.  (Id. at 3-4.)  Ashe also reassured plaintiff
13 that, thereafter, plaintiff would commence his full-time employment with Krush.  (Id. at 4.)

14 On December 27, 2012, Ashe informed plaintiff that he was hired pursuant to a
15 consultancy agreement.  (Id.)  That agreement provided that plaintiff would be paid $3,000 per
16 month for a two-month span.  (Id.)  On December 28, 2012, plaintiff informed Ashe he had
17 resigned from I-Path.  (Id.)

18 On January 6, 2013, plaintiff met with Ashe in Long Beach, California, provided Krush
19 with ideas about Krush's website, and those ideas were implemented shortly thereafter.  (Id.)  At
20 some point, plaintiff also informed Ashe that he would be building a home office to perform his
21 duties for Krush.  (Id.)  Construction commenced on January 8, 2013.  (Id. at 5.)

---

[2] On page one the complaint plaintiff alleges that Krush is a "corporation organized under the laws of the state of Delaware," (Compl. (Dkt. No. 2) at 1), while on page two the complaint plaintiff alleges that Krush is "organized under the laws of the State of Massachusetts."  (Id. at 2.)

[3] The complaint alleges that this court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and is between citizens of different States.  (Compl. (Dkt. No. 2) at 1.)

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

On January 30, 2013, Ashe informed plaintiff that she had been relieved of her duties and that plaintiff would be dealing with Alexis Kopikis going forward. (Id.) On March 12 and March 22, 2013, plaintiff e-mailed Kopikis regarding his employment but received no response. (Id.) Although plaintiff has performed all of his obligations, he has not received payment in violation of the parties' consultation agreement. (Id.) Based on these factual allegations, plaintiff's complaint asserts causes of action for breach of contract and promissory fraud, and seeks damages. (Id. at 5-9.)

Defendant was served with the complaint and summons on March 26, 2014, (Dkt. No. 5), but nonetheless failed to appear in this action. Pursuant to plaintiff's request, (Dkt. No. 6), the Clerk of the Court entered defendant's default on June 2, 2014. (Dkt. No. 7.) Plaintiff filed the pending motion for default judgment on June 24, 2015. (Dkt. No. 12.) Plaintiff's motion was heard before the previously assigned Magistrate Judge pursuant to Local Rule 302(c)(19) on September 4, 2015. (Dkt. No. 20.) Despite being served with plaintiff's notice of motion and motion for default judgment, (Dkt. No. 19), defendant neither filed written opposition nor appeared at the hearing on plaintiff's motion for default judgment.[5]

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

---

[5] While the defendant in this case was served by plaintiff with plaintiff's motion for default judgment, such service generally is not required. See FED. R. CIV. P. 55(b)(2) (requiring that written notice of an application for default judgment be served upon the party against whom judgment is sought only if that party "has appeared in the action"); Local Rule 135(d) (excusing parties from serving documents submitted to the court upon "parties held in default for failure to appear" unless a document asserts new or additional claims for relief against the defaulting parties). Nonetheless, out of an abundance of caution, plaintiff prudently served the defendant with the pending motion for default judgment.

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

ANALYSIS

I.   Whether Default Judgment Should Be Entered

"In a breach of contract claim under California law, a plaintiff must allege (1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages." Lyons v. Coxcom, Inc., 718 F.Supp.2d 1232, 1237 (S.D. Cal. 2009). See also Buschman v. Anesthesia Business Consultants LLC, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014) ("The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach."). With respect to promissory fraud, a complaint must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" Beckwith v. Dahl, 205 Cal.App.4th 1039, 1060 (2012) (quoting Lazar v. Superior Court, 12 Cal.4th 631, 638 (Cal. 1996). "An action for promissory fraud may lie where

a defendant fraudulently induces the plaintiff to enter into a contract." Lazar, 12 Cal.4th at 638.

Here, the allegations found in plaintiff's complaint state a claim for breach of contract and promissory fraud. In this regard, the complaint alleges, in relevant part, that plaintiff entered into a consulting contract with Krush, that plaintiff performed his obligations under the contract, that the defendant breached the contract and that plaintiff suffered damages as a result of defendant's breach. (Compl. (Dkt. No. 1) at 3-6.) Moreover, the complaint also alleges that Krush, through CEO Gina Ashe, promised plaintiff that Krush would employ plaintiff, with the intent to induce plaintiff to resign from his current employment and "to provide creative ideas and consultancy services" to Krush, despite the fact that the defendant never "had any intention" of performing its promises. (Id. at 6-7.) Plaintiff justifiably relied on defendant's false promises by resigning from I-Path and commencing construction on a home office, resulting in damages to plaintiff. (Id. at 7-8.)

Weighing the factors outlined by the court in Eitel, 782 F.2d at 1471-72, the undersigned has determined that entry of default judgment against the defendant is appropriate. There is no reason to believe that defendant's failure to respond to the complaint is due to excusable neglect. As noted above, plaintiff's complaint is sufficient and there is no reason to doubt the merits of his substantive claims. In light of the defendant's failure to appear and the lack of opposition to plaintiff's claims, there is no possibility of a dispute concerning the material facts underlying this action. Although the amount of money plaintiff seeks through the instant motion is not insignificant, it is consistent with defendant's conduct. While recognizing the public policy favoring decisions on the merits, the court finds that a decision on the merits has been rendered impossible by defendant's default. Because these factors weigh in favor of granting default judgment, the undersigned will recommend that plaintiff's motion for default judgment be granted.

II.     Terms of the Judgment

After determining that default judgment is warranted, the court must next determine the terms of the judgment. Any relief granted may not be different in kind from, or exceed in amount, what is demanded in the complaint. FED. R. CIV. P. 54(c). Here, plaintiff's motion for

1  default judgment seeks the award of $6,000 in breach of contract damages.  (MDJ (Dkt. No. 12)
2  at 6.)  That request is consistent with the relief demanded in plaintiff's complaint and is
3  permissible under California law.[6]  See Lewis Jorge Const. Management, Inc. v. Pomona Unified
4  School Dist., 34 Cal.4th 960, 968 (Cal. 2004) ("plaintiff is entitled to damages that are equivalent
5  to the benefit of the plaintiff's contractual bargain").

6        Plaintiff's motion also seeks $5,000 in attorney's fees, (Pl.'s MDJ (Dkt. No. 12) at 6),
7  pursuant to the terms of the parties' consultation agreement, which provides that Krush would
8  "reimburse" plaintiff for "reasonable legal fees" incurred in an action to enforce plaintiff's rights
9  under the consultation agreement.  (RJN (Dkt. No. 13-2) at 7.)  Although plaintiff has not
10 provided a billing statement in support of this request, plaintiff's counsel informed the court at the
11 September 4, 2015 hearing that plaintiff's counsel agreed to represent plaintiff for a flat fee of
12 $5,000 and that, had counsel billed plaintiff at his usual rate of $450 per hour, the true amount of
13 attorney's fees sought based on the amount of attorney time expended in this action would have
14 exceeded $10,000.

15       Plaintiff's motion also seeks $35,675.99 in reliance damages.  (Pl.'s MDJ (Dkt. No. 12) at
16 6.)  Reliance damages, which,

> are secondary or derivative losses arising from circumstances that are particular to the contract or to the parties . . . . are recoverable if the special or particular circumstances from which they arise were actually communicated to or known by the breaching party (a subjective test) or were matters of which the breaching party should have been aware at the time of contracting (an objective test).

21 Lewis, 34 Cal.4th at 968-69.  Moreover, "[b]ecause of the extra measure of blameworthiness
22 inhering in fraud, and because in fraud cases we are not concerned about the need for
23 predictability about the cost of contractual relationships fraud plaintiffs may recover out-of-
24 pocket damages in addition to benefit-of-the-bargain damages." Lazar, 12 Cal.4th at 646
25 (citations and quotations omitted).  See also Wang v. Massey Chevrolet, 97 Cal.App.4th 856, 872

---

[6] Plaintiff has filed a copy of a consulting agreement between "KRUSH Inc.," and plaintiff, providing that Krush would pay plaintiff $3,000 a month for two months, commencing on January 7, 2013 through March 7, 2013.  (RJN (Dkt. No. 13-2) at 5.)  That agreement is signed by plaintiff and Gina Ashe, "CEO, KRUSH Inc."  (Id. at 7.)

(2002) ("A plaintiff fraudulently induced to enter into a contract has the power to elect to affirm the contract and sue for damages resulting from the fraud; the plaintiff may recover 'out-of-pocket' damages in addition to benefit-of-the-bargain damages.").

In this regard, plaintiff seeks $30,000 for "losses on the I-Path Shoes account," for which plaintiff was earning approximately $15,000 per year, and which "will take [plaintiff] at least 1.5 years to obtain a new show account." (Pl.'s MDJ (Dkt. No. 12) at 6.) As plaintiff's counsel conceded at the September 4, 2015 hearing, however, $15,000 multiplied by 1.5 results in only a loss of $22,500 in lost income. Plaintiff also seeks $5,675.99 in costs expended on the construction of a home office "before it became clear that Krush was repudiating the contract and the promises made." (Id.) Plaintiff has submitted evidence establishing the amount requested. (RJN (Dkt. No. 13-2) at 9-22.)

Accordingly, the undersigned recommends that plaintiff be awarded $28,175.99 in reliance damages. See generally Lazar, 12 Cal.4th at 648-49 ("to his fraud claim Lazar may properly seek damages for the costs of uprooting his family, expenses incurred in relocation, and the loss of security and income associated with his former employment in New York").

Finally, plaintiff's motion seeks $5,000 in punitive damages. (Pl.'s MDJ (Dkt. No. 12) at 6-7.) In considering an award of punitive damages, "[t]he factors to be considered are (1) the nature of the defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants." Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc., 727 F.2d 1470, 1473 (9th Cir. 1984). In this regard, "[i]n determining whether punitive damages are appropriate, the Court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendants' financial condition." Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F.Supp.2d 995, 1011 (N.D. Cal. 2001). See also College Hospital Inc. v. Superior Court, 8 Cal.4th 704, 712 (Cal. 1994) ("Punitive damages are to be assessed in an amount which, depending upon the defendant's financial worth and other factors, will deter him and others from committing similar misdeeds.").

/////

1    Here, plaintiff has presented no evidence addressing defendant's financial condition. See
2  Brantley v. Boyd, No. C 07-6139 MMC, 2013 WL 3766911, at *9 (N.D. Cal. July 16, 2013)
3  (declining to award punitive damages where "plaintiffs have not alleged or presented any
4  measurable evidence regarding defendant's wealth"); cf. Adriana Intern. Corp. v. Thoeren, 913
5  F.2d 1406, 1415 (9th Cir. 1990) ("The court had sufficient evidence of the net worth of Adriana,
6  Zade and Kunz from the declarations of Thoeren, Zade and Kunz to determine the appropriate
7  amount of punitive damages.").
8    Moreover, although plaintiff has established that default judgment is warranted on both
9  his breach of contract and promissory fraud claims, punitive damages "are not available under
10 contract law." Zazenski v. Danner, Case No. C-12-2344-RMW, 2013 WL 5513437, at *6 (N.D.
11 Cal. 2013). See also Roam v. Koop, 41 Cal.App.3d 1035, 1040 (1974) ("Punitive damages may
12 not be recovered in actions founded in contract.").
13    The undersigned, therefore, will not recommend an award of punitive damages.

## CONCLUSION

15    Accordingly, IT IS HEREBY RECOMMENDED that:
16        1. Plaintiff's June 24, 2015 motion for default judgment (Dkt. No. 12) be granted;
17 and
18        2. Plaintiff be awarded $39,157.99 in damages, consisting of $6,000 in promised
19 compensation, $5,000 in attorney's fees and $28,175.99 in reliance/out-of-pocket damages.
20    These findings and recommendations will be submitted to the United States District Judge
21 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)
22 days after these findings and recommendations are filed, any party may file written objections
23 with the court.  A document containing objections should be titled "Objections to Magistrate
24 Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed
25 within seven (7) days after service of the objections.  The parties are advised that failure to file
26 ////
27 ////
28 ////

objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 23, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

graham0517.mdj.f&rs.docx